UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

ANTHONY HARRIS,

        Plaintiff,                  Case No. 2:23-cv-104

v.                                        Honorable Robert J. Jonker

CRYSTAL COTA et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events

about which he complains, however, occurred at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Plaintiff sues MDOC Director Heidi Washington, as well as the following LMF personnel: Warden Catherine Bauman, Prison Counselor Cullen Loman, and General Office Assistant Crystal Cota.

As relevant background to Plaintiff's present claims, Plaintiff is currently serving sentences imposed by the Washtenaw County Circuit Court following a bench trial at which Plaintiff was convicted of three counts of first-degree criminal sexual conduct (CSC-I), four counts of second-degree criminal sexual conduct, and one count of accosting a child for immoral purposes. *See People v. Harris*, No. 346048, at *1 (Mich. Ct. App. Jan. 21, 2020). The Michigan Court of Appeals affirmed his convictions and sentences on January 21, 2020. *See id.* The Michigan Supreme Court denied Plaintiff's application for leave to appeal on June 30, 2020. *See People v. Harris*, 944 N.W.2d 704 (Mich. 2020). Plaintiff subsequently filed a motion for relief from judgment pursuant to Michigan Court Rule 6.500, which was denied by the trial court. *See* Register of Actions, Case No. 17-000296-FC, https://tcweb.ewashtenaw.org/PublicAccess/default.aspx (select "Criminal Case Records," complete the verification process, type "17-000296-FC" for "Case Number," select "Search," then select the link for Case No. 17-000296-FC) (last visited June 13, 2023). Petitioner's federal habeas corpus petition pursuant to 28 U.S.C. § 2254 is currently pending before this Court. *See generally Harris v. Schroeder*, No. 2:22-cv-126 (W.D. Mich.).

Plaintiff's complaint implicates MDOC Director's Office Memorandum (DOM) 2022-23, addressing concerned incoming prisoner mail, which was issued on December 16, 2021. *See* DOM 2022- 23, https://www.michigan.gov/- media/Project/Websites/corrections/postmigration1/DOM 010122_2022_23.pdf?rev=11b8d1360cd94016b5fe2e7399cf8641 (last accessed June 26, 2023). That DOM provided, in relevant part:

> Mail room staff shall continue to search incoming mail as set forth in PD 05.03.118 "Prisoner Mail." Any incoming mail that does not require special handling, including photographs, that staff determine a prisoner may receive shall be photocopied and the photocopies placed in an envelope purchased by the Prisoner Benefit Fund (PBF). After the mail has been photocopied, mail room staff shall ensure all of the pages are accounted for and each photocopied page is clear and legible. Prisoners shall notify staff immediately if the mail they received is not legible or they believe it to be incomplete. Staff shall then review the mail to confirm that the mail the prisoner received is clear, legible, and complete. Staff shall only photocopy the mail again if the mail is unclear, illegible, or incomplete. The front of the envelope the mail came in shall also be photocopied and placed in the envelope, so the prisoner has the return address of the sender. After the original mail and envelope has been photocopied, it shall be retained for 14 calendar days. After 14 calendar days, the original mail and original envelope shall be placed in a locked bin for shredding or immediately shredded by staff if the locked bin is unavailable. Original vital documents that are mailed to a facility shall not be shredded and shall be forwarded to the Records Office. Original photographs that are mailed to a prisoner may be returned to the sender at the prisoner's expense after they are photocopied. Funds shall not be loaned for this purpose. The prisoner shall notify mail room staff within 14 calendar days of receipt of the photograph if they want to return the original photograph to the sender. Since prisoners are only receiving photocopies of incoming mail, mail room staff shall no longer reject mail that prevents an effective search as set forth in Paragraph OO of PD 05.03.118.

*See id.* DOM 2022-23 has since been superseded by DOM 2023-18R3, a copy of which Plaintiff has attached to his complaint. (ECF No. 1-5.) DOM 2023-18R3 contains the same language set forth above that was included in DOM 2022-23. (*Id.*, PageID.36.)

In his complaint, Plaintiff alleges that on July 25, 2022, Defendant Cota "received an original, sworn[,] and notarized affidavit" addressed to Plaintiff. (ECF No. 1, PageID.9.) Defendant Cota photocopied the affidavit and provided the photocopy to Plaintiff. (*Id.*) Plaintiff has attached a copy of the affidavit in question to his complaint. (ECF No. 1-6, PageID.40.) That affidavit was prepared by Ro'Quan Tyler and alleges that Tyler did not see Plaintiff "sexual[ly] abuse his daughter or make his daughter touch him inappropriately." (*Id.*) Tyler states that he is only just now coming forward because he "was younger and his mother did not want him to get involved in any court proceedings or have any police contact because [he] was on probation" at the time. (*Id.*)

3

Plaintiff recognized that the affidavit "directly related to the criminal charges for which he stands incarcerated" and "was prompted to [inquire] after the preservation of the original." (ECF No. 1, PageID.9.) Plaintiff claims that pursuant to DOM 2022-23, Defendant Cota "was duty bound to maintain possession of the original document." (*Id.*) On July 28, 2022, Plaintiff prepared a pre-addressed envelope and a written request directed to the mail room, asking that he "be permitted to preserve the original affidavit which embodies evidence which could exonerate" him. (*Id.*) Plaintiff gave the envelope and request to Defendant Loman, who took them to Defendant Cota. (*Id.*)

Plaintiff later learned from Defendant Loman that Defendant Cota "failed to comply with the 14[-]day retention period of original incoming mail documents as she informed Defendant Loman that the original affidavit was destroyed, lost, or misplaced, as it could not be found anywhere in the secured mailroom." (*Id.*, PageID.9–10.) Plaintiff filed a grievance, asserting that the destruction of the original document "was in violation of regulations." (*Id.*, PageID.10.) Defendant Loman rejected his grievance, stating that "[m]ailroom staff are not under any obligation to [preserve the original document] unless the item is an original photograph or a vital document." (*Id.*, PageID.11.) Plaintiff contends that Defendant Loman "misdirected the grievance process by providing a manufactured response aimed at convoluting the issue grieved." (*Id.*, PageID.12.) Plaintiff contends further that Defendant Bauman failed to correct the issue in her Step II grievance response. (*Id.*, PageID.13–14.) Finally, Plaintiff faults Defendant Washington for failing to correct the transgression and for "creat[ing] a department[-]wide community of staff who refuse to follow the very policy directives the office of the director created." (*Id.*, PageID.14.)

Based upon the foregoing, Plaintiff asserts violations of his First Amendment right to access the courts, as well as violations of various MDOC Policy Directives. The Court also

construes Plaintiff's complaint to assert a First Amendment claim related to inference with his incoming mail, and constitutional violations premised upon the handling of and responses to his grievances. Finally, Plaintiff seeks a "declaratory ruling as to the legitimacy of [DOM] 2022-23." (*Id.*, PageID.15.) According to Plaintiff, this DOM "is an unconstitutional overreaching department [regulation] without a shred of penological justification." (*Id.*) Plaintiff appears to suggest that DOM 2022-23 violates the First Amendment. In addition to that declaratory relief, Plaintiff requests that Defendants be enjoyed from enforcing the provision of DOM 2022-23 that prohibits prisoners "from sending out an original legal document." (*Id.*, PageID.18.) He also seeks compensatory and punitive damages. (*Id.*, PageID.18–19.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     First Amendment Claims

#### 1.     Access to the Courts

Plaintiff contends that his First Amendment right to access the courts was violated when Defendant Cota failed to follow DOM 2022-23 and retain the original copy of Ro'Quan Tyler's affidavit. As set forth above, Plaintiff received a copy of the affidavit, but the original was not retained.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting

barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying

7

cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Here, Plaintiff contends that the original affidavit "embodies evidence which could exonerate" him. (ECF No. 1, PageID.9.) Although Plaintiff does not explicitly address the underlying cause of action, as noted above, he has a § 2254 petition that is currently pending before this Court. Presumably, Plaintiff seeks to use Ro'Quan Tyler's affidavit in order to collaterally attack his convictions and sentences. Plaintiff, therefore, has sufficiently referenced an underlying cause of action for which there can be actual injury.

Plaintiff's complaint, however, is completely devoid of facts suggesting how any of the named Defendants impeded his right to access the courts. Plaintiff does not explain why he requires the original copy of Tyler's affidavit to pursue his collateral attack on his convictions and sentences. As noted above, Plaintiff received a photocopy of the affidavit, and he attached a copy of the affidavit to the instant complaint. Presumably, Plaintiff would be able to use a copy of the affidavit in his pending federal habeas proceedings as well as any state court proceedings that Plaintiff may wish to pursue. Plaintiff simply fails to allege any facts from which the Court could infer that Plaintiff suffered any lost remedy as a result of not receiving the original affidavit. Plaintiff, therefore, has failed to state a claim for denial of access to the courts, and such claim will be dismissed.

### 2. Interference with Incoming Mail

The Court has construed Plaintiff's complaint to assert a First Amendment claim premised upon the alleged interference with his incoming mail.

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First

8

Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (quoting *Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987). Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner*, 482 U.S. 78.

Plaintiff, however, does not allege any facts from which the Court could construe a plausible First Amendment claim premised upon interference with Plaintiff's incoming mail. Plaintiff received the document in question—Tyler's affidavit. Plaintiff's incoming mail was not censored; instead, Plaintiff takes issue with the fact that he received a copy of the affidavit, not the original, and that the original was not retained. "The First Amendment protects *communication*, not pieces of paper." *See Williams v. Redman*, No. 3:20-cv-196-JD-MGG, 2021 WL 1907224, at *4 (N.D. Ind. May 12, 2021) (concluding that an inmate failed to state a First Amendment violation based on the fact that the jail where he was incarcerated copied incoming mail, gave him the copies, and held the originals with the plaintiff's property). Plaintiff's displeasure with his receipt of the copy, not the original, simply does not rise to the level of a First Amendment violation. Accordingly, the Court will dismiss any intended First Amendment claim premised upon interference with Plaintiff's incoming mail.

### B. Claims Regarding the Handling of and Responses to Plaintiff's Grievances

The Court has also construed Plaintiff's complaint to assert constitutional claims premised upon Defendants' handling of and responses to his grievances concerning the loss of the original affidavit. Plaintiff, however, has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective

prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' actions did not deprive him of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendants' conduct. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendants' actions (or inaction) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been

10

improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, Plaintiff has failed to state a cognizable claim against Defendants premised upon their handling of and responses to Plaintiff's grievances.

### C. Constitutionality of DOM 2022-23

Plaintiff also challenges the constitutionality of DOM 2022-23 on First Amendment grounds, suggesting that it is an "overreaching department [regulation] without a shred of penological justification." (ECF No. 1, PageID.15.) Plaintiff contends that there is "no justification for prohibiting the sending out [of] original legal documents, comparable to a sworn and notarized affidavit."[1] (*Id.*, PageID.16.)

---

[1] Constitutional challenges are categorized as either "facial" or "as-applied" challenges. A facial challenge is described as "an effort to invalidate the law in each of its applications, to take the law off the books completely." *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 691 (6th Cir. 2015) (quoting *Speet v. Schuette*, 726 F.3d 867, 871 (6th Cir. 2013)). To prevail under a facial challenge, a plaintiff must establish that "no set of circumstances exist under which the statute would be valid." *Id.* (quoting *Speet*, 726 F.3d at 872). Conversely, an as-applied challenge "argues that a law is unconstitutional as enforced against the plaintiffs before the court." *Id.* (quoting *Speet*, 726 F.3d at 872). Here, given that Plaintiff seeks a declaratory ruling regarding the constitutionality of DOM

11

The question of whether a prison regulation can withstand a constitutional challenge is controlled by *Turner v. Safley*, 482 U.S. 78 (1987). Under *Turner*, the Court must consider (1) whether there is a "rational connection" between the challenged regulation and a legitimate government interest; (2) whether there are alternative means for prisoners to exercise the allegedly affected right; (3) the impact an accommodation of the asserted right will have on other inmates, guards, and prison resources; and (4) whether "ready alternatives" to the challenged regulation exist. *See Turner*, 482 U.S. at 89–90. The *Turner* standard is one of reasonableness: a regulation is valid "if it is reasonably related to legitimate penological interests." *Id.* at 89. The burden of disproving the validity of a prison regulation lies with the plaintiff. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

As an initial matter, to the extent Plaintiff challenges the constitutionality of DOM 2022-23, such a challenge is moot, because DOM 2022-23 has been superseded and is no longer in place. As noted above, DOM 2023-18R3 is the current DOM in place regarding incoming prisoner mail. To the extent that Plaintiff challenges the constitutionality of DOM 2023-18R3 and its provisions regarding retention of original documents, Plaintiff has not demonstrated that the provision violates the First Amendment. Plaintiff has not cited, and the Court has not located, any case law suggesting that there is a First Amendment right to retention of original documents within the prison setting.

As to the first *Turner* factor, Plaintiff suggests that there is "no justification for prohibiting the sending out [of] original legal documents, comparable to a sworn and notarized affidavit."

---

2022-23, the Court has construed his claim to be a facial challenge to that regulation. To the extent Plaintiff asserts an as-applied challenge, he fails to state such a claim for the reason set forth *supra* in Part III.A.2.

(ECF No. 1, PageID.16.) Plaintiff, however, is mistaken in his belief that Tyler's affidavit constitutes legal mail. MDOC policy indicates that

> [o]nly mail received directly from an attorney or a law firm, a legitimate legal service organization, the Department of the Attorney General, a prosecuting attorney's office, a court, a clerk of the court, a Friend of the Court office, or the Office of the Legislative Corrections Ombudsman is considered legal mail, and only if the mail is clearly identified on the face of the envelope as being from one of the above. It is not sufficient for the envelope to be simply marked "legal mail."

MDOC Policy Directive 05.03.118 ¶ FF (eff. Mar. 1, 2018). Inmates may request special handling for legal mail. *Id.* Incoming mail subject to special handling is "opened and inspected for money, controlled substances, and other physical contraband in the prisoner's presence." *Id.* ¶ JJ. The policy explicitly states that the "content of the mail shall not be read or skimmed." *Id.* If mail that is opened in the inmate's presence "clearly does not qualify for special handling or contains contraband," it is returned "to the mailroom for processing in accordance" with policy. *Id.* MDOC staff are responsible for maintaining logs to "document the delivery of mail receiving special handling." *Id.* ¶ KK. Thus, MDOC policy provides that inmates may receive original copies of legal mail that is subject to special handling. Nothing in Plaintiff's complaint suggests that the affidavit prepared by Tyler constituted legal mail.

DOM 2023-18R3 explicitly sets forth that the measures imposed upon incoming mail that does not require special handling, such as the affidavit in question here, are "[d]ue to an increase in contraband that has been coming into facilities from incoming prisoner mail." *See* DOM 2023-18R3. Countering the smuggling of contraband is a legitimate penological interest. *See, e.g.*, *Bratcher v. Clarke*, No. 1:17-cv-474, 2018 WL 4656684, at *8 (E.D. Va. Sept. 26, 2018) (concluding that the Virginia DOC's policy restricting receipt of original documents and instead providing photocopies of incoming mail to inmates was "reasonably related to its legitimate

13

interest in jail security and prisoner rehabilitation"), *reversed on other grounds by* 770 F. App'x 105 (4th Cir. 2019).

With respect to the second *Turner* factor, Plaintiff has not demonstrated how the failure to retain original documents for more than 14 days restricts inmates' First Amendment rights. DOM 2023-18R3 does not prohibit inmates from receiving mail or accessing the content of such mail. Instead, inmates receive copies of all documents that do not require special handling. DOM 2023-18R3, however, does not just affect Plaintiff, it affects inmates at all MDOC correctional institutions. In that case, it is "particularly appropriate for a court to deter to the 'informed decision of corrections officials.'" *Bratcher*, 2018 WL 4656684, at *19 (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 418 (1989)). While the Court recognizes that inmates would prefer to receive and retain original copies of correspondence, the law provides that "alternatives . . . need not be ideal; they need only be available." *Overton*, 539 U.S. at 135.

Furthermore, Plaintiff has not alleged facts regarding the impact that would result upon prison resources if the MDOC permitted unlimited retention of incoming mail. Plaintiff suggests that there would be no impact because staff are already required to retain such documents for 14 days. (ECF No. 1, PageID.17.) If the MDOC were required to retain all original copies of each inmate's incoming mail, however, the MDOC would require significant additional storage space for these documents.

Finally, with respect to the last *Turner* factor, if an inmate "can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Turner*, 482 U.S. at 90–91. Plaintiff contends that there is "no ready alternative to DOM [2023-18R3], as it is the only available means a prisoner without counsel or the funds to hire an

14

attorney[] may receive any legal documentation, or mail for that matter." (ECF No. 1, PageID.18.) Plaintiff argues that there is no alternative "to secure the preservation of an original legal document" and to ensure that a *pro se* inmate receives an original legal document. (*Id.*) As discussed above, however, affidavits such as the one prepared by Tyler do not necessarily qualify as legal mail, and MDOC Policy Directive 05.03.118 already sets forth procedures for processing mail that requires special handling, such as legal mail. With respect to all other mail, inmates have the opportunity to receive photocopies. Given the additional storage and staff that would be required to maintain the volume of original incoming mail that is received by each MDOC institution, the Court cannot agree with Plaintiff that the costs to the MDOC's valid penological interests would be *de minimis*.

In sum, Plaintiff has not met his burden of demonstrating that the provisions of DOM 2023-18R3 regarding retention of original incoming mail that is not subject to legal handling violates the First Amendment. Accordingly, his claim regarding the constitutionality of this provision will be dismissed.

### D. Violations of MDOC Policy

Plaintiff alleges further that Defendants' actions violated various MDOC Policy Directives. Section 1983, however, does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). With respect to Plaintiff's claims concerning MDOC policy, the only possible way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause.

To demonstrate a due process violation, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no

federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts, however, have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Plaintiff's allegation that Defendants violated MDOC policy and procedure, therefore, fails to raise a cognizable federal constitutional claim.

Plaintiff may seek to invoke this Court's supplemental jurisdiction over his state law claims for violations of MDOC policy. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

As discussed above, all of Plaintiff's federal claims have been dismissed. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims concerning violations of MDOC policy, and such claims will be dismissed without prejudice.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims regarding violations of MDOC Policy Directives will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  June 27, 2023                          /s/ Robert J. Jonker
                                               Robert J. Jonker
                                               United States District Judge